## BETHEA v. NORTHEASTERN RAILROAD COMPANY.

1. The special contract of a round trip railroad ticket to New Orleans required a restamping of the ticket in *Baltimore* to make it good for the return trip, but as this requirement was inconsistent with the whole tenor of the contract, and as the holder was in no wise misled thereby, the court construed the word "Baltimore" to be a misprint for "New Orleans," and that the special contract requiring a restamp for the return trip was not thereby invalidated.
2. Where the purchaser of a railroad ticket signed his name to the contract printed thereon, it must be assumed, in the absence of fraud, misrepresentation, or mistake, that he read the contract and assented to its conditions.
3. The stipulation in a railroad ticket, that it shall not be good for the return trip unless the holder identifies himself to the satisfaction of the ticket agent of the terminal line, and is stamped by him, is not unreasonable nor contrary to the policy of the law.
4. And, under the express terms of the contract, such agent, even if the agent of the initial road, is the party to determine the sufficiency of the identification, and it could not be submitted to the jury to find whether or not the agent had been satisfied.
5. But where a railroad company issues a through ticket for itself and as agent for other lines on the route, and the ticket is to be restamped for return passage by the ticket agent of the terminal line, such agent is thereby made the agent of all the companies, and the initial road is responsible only for its own breaches of the contract.
6. The holder of a railroad ticket has no cause of action against the company for failing to carry him on his ticket, where he declined to surrender his ticket and voluntarily paid his fare to the conductor. ·

Before ALDRICH, J., Marion, April, 1886.

This was an action by Julian M. Bethea against the Northeastern Railroad Company upon the cause of action stated in the opinion.

*Messrs. Sellers & Sellers*, for appellant.

*Messrs. Theo. G. Barker* and *Jos. T. Walsh*, contra.

February 8, 1887.   The opinion of the court was delivered by MR. JUSTICE McGOWAN.   On January 7, 1885, the plaintiff,

Julian M. Bethea, at Florence, S. C., purchased from an agent of the defendant corporation a through ticket from Florence to New Orleans and to return *via* Northeastern, Charleston & Savannah, Savannah, Florida & Western, Pensacola & Atlantic, and Louisville & Nashville Railroads. He paid twenty-eight dollars for the ticket, which stated that it was "issued by the Northeastern Railroad Company," and had printed on it these words: "Special contract. Good for one first class passage to New Orleans, La., and return, when officially stamped on back thereof, and presented with coupons attached. In consideration of the reduced rate at which this ticket is sold, I, the undersigned, agree to and with the several companies over whose lines this ticket entitles me to be carried as follows, to wit," &c.—then appears, among others, the following stipulations:

"Item 1. That in the selling of this ticket, the Northeastern Railroad Company acts as agent, and is not responsible beyond its own line."

"Item 5. That it is not good for return passage unless the holder identifies himself as the original purchaser, *to the satisfaction of the authorized agent* of the Baltimore Steam Packet Company at Baltimore, on or before May 31, 1885; and when officially signed and dated in ink, and duly stamped by the said agent, this ticket shall then be good only three days from said date.

"Item 6. That I, the original purchaser, hereby agree to sign my name, and otherwise identify myself as such, whenever called upon to do so by any conductor or agent of the line or lines over which this ticket reads, and on my failure or refusal, that this ticket shall become thereafter void."

"Item 10. That unless all the conditions of this ticket are fully complied with, it shall be void."

"Item 12. And it is especially agreed and understood by me, that no agent or employee of any one of the lines named on this ticket has any power to alter, modify, or waive in any manner any of the conditions named in this contract."

This contract was signed by the plaintiff at Florence. On the reverse side are two square blank spaces. Over the one on the left is a printed direction for agent of Northeastern R. R. Company to stamp in it, and over the other blank space on right are

the words: "Agent of the Louisville & Nashville R. R. Company will stamp in space below." The Northeastern R. R. Company had placed its stamp on the left, and the plaintiff had signed his name to this statement: "In compliance with my contract with the Northeastern Railroad Company, and lines over which this ticket reads, I hereby subscribe my name as the original purchaser of this ticket;" but the stamp of the Louisville & Nashville R. R. Company was not affixed by the agent thereof, and in consequence the plaintiff, on the return trip, paid his way back from New Orleans to Florence. The ticket had twelve coupons attached, and on all, except the first and last (for passage from Florence to Charleston and from Charleston to Florence), these words are printed: "Issued by Northeastern R. R. Company on account of Charleston & Savannah Railway," "Savannah, Florida & Western R. R. Companies," &c., &c.—the several other lines over which plaintiff was to travel, in going to and returning from New Orleans.

The plaintiff brought the action against the Northeastern Railroad Company alone for $5,000 damages, alleging that said company was liable for the damages caused by the different connecting companies named refusing on the return trip the coupons intended for them, respectively, and to pass him; but in disregard of the contract of the defendant company, charged him regular fare, as if he had no return ticket. The defendant company denied that they undertook by agencies of their own to carry, or have carried, the plaintiff from Florence to New Orleans and back to Florence; but, on the contrary, that, in the sale of the ticket aforesaid, they acted merely as the agent of the different companies named, and, as such agent, made a contract with the plaintiff that said companies would each, for itself, carry and return him on its own line upon certain conditions, which were not complied with; and especially as to the return trip, that the ticket was not "officially signed and duly stamped by the agent of the Louisville & Nashville R. R. Company at New Orleans," in accordance with the contract before referred to; and even if the absence of the stamp agreed upon should not be regarded as sufficient to exonerate the connected lines from responsibility, in refusing to give the plaintiff his return passage, such liability did

not attach solely to the defendant company, but to each of the companies named, and limited to the extent of its own line.

It appeared that the plaintiff called for a round trip ticket. The business had to be transacted somewhat hurriedly, but he paid the fare, $28, signed the special contract, and got his ticket. There was no trouble in going to New Orleans. The officers of each of the connecting roads cut off the coupons intended for them, respectively, and passed the plaintiff. But when he was about to return from New Orleans, he went to the office of the agent of the "Louisville & Nashville R. R. Company," to get his ticket stamped for the return trip; and the agent, after the plaintiff had written his name, said he did not think his signature "was like the one to the contract," and declared that he was not satisfied of his identity, and accordingly refused to put his stamp upon the ticket. On account of the absence of this stamp, the officers of the different companies, until Charleston was reached on his return, refused to take the return coupons and pass the plaintiff, but charged him full fare, which aggregated about $30. When the plaintiff reached the southern terminus of the Northeastern Railroad at the Charleston junction, he did not produce his ticket and upon that demand a passage back to Florence, but, as he testified : "I asked Mr. Choate (conductor) how much the fare was to Nichols. He told me, and I told him I would pay him the fare and wanted a receipt. I would show him why I wanted a receipt. He said he would give me a receipt with pleasure.    *    *    *    I did not ask him to take the ticket particularly," &c.

The Circuit Judge dismissed the complaint on the ground that the plaintiff had failed to show by his proof that the defendant corporation was liable under the allegations of the complaint; and the plaintiff appeals to this court upon the following exceptions :

"I. That the plaintiff is or was not bound by any of the printed special (small type) conditions or stipulations on said ticket, for the reasons that they were not brought to his attention before he signed his name to them and before he paid his money, and because he had no knowledge of them.

"II. That admitting plaintiff was bound by said special conditions, stipulation 5th in said contract, to wit, 'That it is not good

for return passage unless the holder identifies himself as the original purchaser, to the satisfaction of the authorized agent of the Baltimore Steam Packet Company at Baltimore, on or before May 31, 1885, and when officially signed and dated in ink, and duly stamped by the said agent, this ticket shall then be good only for three days from such date,' was impossible of performance, or at least greatly unreasonable, and thereby invalidates the entire special contract.

"III. That should the court hold that all the conditions mentioned in said contract, on the back of the plaintiff's ticket, were brought home and known to him, yet the plaintiff was not bound by them except as they were reasonable, and not contrary to the policy of the law in reference to the liability of common carriers of passengers.

"IV. That whether or not plaintiff reasonably performed condition 6, to wit, 'That I, the original purchaser, hereby agree to sign my name, and otherwise identify myself as such, whenever called upon to do so by any conductor or agent of the line or lines over which this ticket reads, and on my failure or refusal, this ticket shall become thereafter void,' was a question of fact which should have been submitted to the jury. Whether plaintiff reasonably identified himself or not, was solely a question of fact, and the evidence upon that point should have been passed upon by the jury.

"V. That whether or not defendant corporation refused to take their own coupon upon their own road, upon plaintiff's return, was a question of fact, which should have been submitted to the jury.

"VI. That the direction on the back of the ticket to plaintiff, 'Agent of the Louisville & Nashville R. R. Company will stamp in space below,' constituted said agent the agent of the defendant for the purpose of stamping said ticket, &c., and for his wilful refusal to stamp and sign said ticket, after plaintiff had signed it in ink and otherwise identified himself, the defendant is responsible and cannot now repudiate the wilful omission of its said agent to perform the duties falling within the scope of said agency; all of which, together with the other facts in the case, should have been submitted to the jury.

"VII. That upon a proper construction of the contract, general or special, the defendant is liable under the evidence for its breach."

There seems to have been a mistake in the body of the contract endorsed on the ticket, in requiring the passenger, with a view to his return trip, to identify himself before "the authorized agent of the Baltimore Steam Packet Company at Baltimore." But as this stipulation was inconsistent with the whole tenor of the contract, which secured a through ticket from Florence, S. C., to New Orleans, La:, the last coupon on the outward route and the first in returning being that of the "Louisville & Nasheville R. R. Company," and was corrected by the printed declaration on the reverse side over the blank space for the stamp of "the agent of the Louisville & Nashville R. R. Company"; and especially as the plaintiff was in no wise misled thereby, but went to the proper office in New Orleans and subscribed his name as the original purchaser—we cannot think that it was anything more than an obvious misprint, or that there is anything in the second exception based thereon.

The first exception makes the question that the plaintiff was not bound by any of the special (small type) conditions on the ticket, "for the reasons that they were not brought to his attention before he signed his name to them and paid his money, and because he had no knowledge of them." We have little doubt that the transaction of purchasing the ticket at Florence was somewhat hurried; but the plaintiff signed the contract, and in doing so certainly made himself a party to all the conditions therein stated. It would tend to disturb the force of all such contracts, if one, in possession of ordinary capacity and intelligence, were allowed to sign a contract and act under it in the enjoyment of all its advantages, and then to repudiate it upon the ground that its terms were not brought to his attention. In the absence of all fraud, misrepresentation, or mistake, it must be presumed that he read the contract and assented to its conditions. *Lawson on Carriers,* § 102; 32 *Am. Dec.,* 506, and note.

Nor do we think that the plaintiff could disregard the stipulations on the ground that they were "unreasonable and contrary to the policy of the law." It may be true that the weight of

authority is in favor of excluding negligence altogether as an element of contract between the carrier and his employer, and of holding the former to a rigid accountability for every degree of negligence, without the power by contract, or in any other mode, to divest himself of it.   But, as we understand it, the carrier may in all other respects, except as to negligence (and there is no such complaint in this case), limit his liability by special contract, more especially as to all lines beyond his own road.   See *Piedmont Company* v. *C. & G. Railroad Company*, 19 *S. C.*, 380; *Lawson on Carriers*, § 28; *Thomp. Carr. Pass.*, 525; *Redf. Carr.*, § 138, and the authorities cited.

What, then, was the contract?   Being in writing, that was for the determination of the court, and taking the whole paper together, we think the Circuit Judge was authorized to conclude that the officers of the Northeastern R. R. Company entered into the contract for themselves as to their own line of road, but as agent of the other companies named, as to their respective lines of road ; that the contract was, in fact, that of each of the companies, through them as agent, to carry and return the plaintiff on its own road upon the conditions stated, each being responsible for its own default in that regard, and no other.   Such were the express terms and conditions of the contract, which declared that in issuing the ticket the "Northeastern R. R. Company acts as agent, and is not responsible beyond its own line," and there was a coupon attached for each of the connecting roads, stating that it "was issued on account of said company," naming it.

In this view it was only necessary to enquire whether the Northeastern Company (the only one sued) had broken their contract, so as to be made liable for damages to the plaintiff.   They certainly carried the plaintiff on their line on his passage towards New Orleans, but the complaint is that on his return they did not carry him on their road back to Florence without further charge. Upon this point it might be enough to say that we concur with the Circuit Judge that there was no evidence that the defendant corporation failed in their duty to carry the plaintiff from the Charleston junction to Florence on the return ticket.   The proof was that he did not demand to be returned on that ticket, giving up the coupon intended for that company, which was of course

the very last on it.   On the contrary, he made no such demand,
but from some cause voluntarily paid the fare from the Charles-
ton junction to Florence, and took a receipt for the same, retain-
ing the coupon.   In this we cannot see that there was any
breach of the contract, or error in the order of the Circuit
Judge.

But it is strongly urged upon us that as the ticket was issued
by the defendant corporation, and they received the fare for the
round trip, the whole contract as an entirety must be considered
as their undertaking; that they undertook to carry, or to have
carried, the plaintiff to New Orleans and back; that the officer
of the Louisville & Nashville Company at New Orleans was
thereby made "their agent" to stamp the return ticket, and as
he, without sufficient cause, failed to do so, the defendant corpo-
ration, through him, committed a breach of their contract, and
should be held responsible for all the damages resulting from the
plaintiff's failure to get his return passage.   We think we have
shown that the Circuit Judge was authorized to consider the con-
tract as made by the defendant corporation for themselves and as
agent for the intermediate companies, and that the officer at New
Orleans, indicated as the person to determine the question of
identity and stamp the return ticket, was thereby made the agent
of all the said companies as to their respective roads.   But if we
are mistaken in that, and the said officer at New Orleans, indi-
cated and agreed upon as the person to determine the identity of
the passenger, with a view to his return passage, should be con-
sidered as the agent of the defendant corporation for the whole
line, we do not see how that would help the plaintiff.   That officer
was not indicated as "agent" for the purpose of performing a
merely ministerial act, but, on the contrary, it was made his duty
to judge of the sufficiency of the evidence of identification; not
whether the plaintiff had reasonably identified himself by hand-
writing or otherwise, but whether he was identified to "the satis-
faction" of the person named.   That officer may have been un-
necessarily hard to "satisfy," but that was the test required by
the contract itself.

So that even in the view of the plaintiff, we cannot see that
the judge erred in not referring it to the jury to determine

whether the "agent of the Louisville & Nashville R. R. Company at New Orleans" was or was not "satisfied" with the proof of identity offered by the plaintiff—that was a matter which could only be determined by the agent himself. It strikes us that from the very nature of the question it could not be decided by the jury. It seems that the handwriting of the plaintiff in New Orleans did not help to identify him, and it was his misfortune that he was unable to offer other proof which was satisfactory.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.